UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

GRECIA ECHEVARRIA-HERNANDEZ   )
                              )
           Plaintiff,         )   Case No.: 2:16-cv-00943-GMN-VCF
    vs.                       )
                              )   **ORDER**
AFFINITYLIFESTYLES.COM, INC., )
                              )
           Defendant.         )
                              )

Pending before the Court is the Motion to Compel Arbitration, (ECF No. 9), filed by Defendant Affinitylifestyles.com, Inc. ("Defendant"). Plaintiff Grecia Echevarria-Hernandez ("Plaintiff") filed a response, (ECF No. 15), and Defendant filed a reply, (ECF No. 16). For the reasons set forth herein, the Motion to Compel Arbitration is **GRANTED**.

I.   **BACKGROUND**

This case concerns allegations that Defendant, as Plaintiff's employer, discriminated against Plaintiff based on her religion. (Compl., ECF No. 1). Plaintiff began her employment in March 2015 as a "brand ambassador" at the Defendant's Las Vegas office. (*Id.* ¶ 14). According to Plaintiff, she quickly discovered that Defendant had an "established religious culture among its employees." (*See Id.* ¶ 16). Specifically, Plaintiff claims that Defendant required employees to attend Scientology themed self-betterment courses to be eligible for raises. (*Id.* ¶¶ 18–25). Plaintiff states that she attempted to sit through a course, but felt uncomfortable due to her differing personal religious beliefs and had to leave. (*Id.* ¶¶ 20, 21). Thereafter, Plaintiff claims her coworkers "began to interact differently with Plaintiff, and the workplace environment became extremely unpleasant." (*Id.* ¶ 26). In her Complaint, Plaintiff argues that, despite Defendant's claim that she was terminated due to job performance, her termination actually resulted from her differing religious views. (*Id.* ¶¶ 53–54). Based on these

allegations, the Complaint sets forth claims for: (1) unlawful employment practice under Title VII; (2) disparate treatment under Title VII; (3) hostile work environment under Title VII; (4) retaliation under Title VII; (5) religious discrimination under N.R.S. 613.330; and (6) tortious discharge. (*Id.* ¶¶ 36–84).

In the instant Motion, Defendant argues that the Court should compel arbitration of these claims in accordance with the arbitration policy detailed in Plaintiff's Employment Agreement ("the Agreement"). (*See* Mot. to Compel 6:2–7, ECF No. 9). Defendant asserts that Plaintiff agreed, in a signed writing, to the terms of the Agreement on March 11, 2015. (*Id.* 2:16–17). The arbitration policy in relevant part states:

> [T]he parties agree that any controversy, dispute or claim between Company and myself out of and/or involving this Agreement and/or any other aspect of our employment relationship . . . shall first be submitted for resolution by mediation . . . .
>
> If the best efforts of the parties to mediate a resolution of any claim based on Title VII of the Federal Civil Rights Act of 1964 (Title VII Claims) do not result in a settlement of our differences, then . . . the parties shall resolve such dispute . . . by binding arbitration . . . .
>
> [I]f the best efforts of the parties to mediate a resolution do not result in a settlement of our differences, then . . . any claim or dispute out of and/or involving this Agreement and/or any other aspect of our employment relationship not based on Title VII of the Federal Civil Rights Act of 1964, including, without limitation, any allegation of (a) wrongful discharge or termination, (b) discrimination or harassment under the federal Age Discrimination in Employment Act, the federal Americans with Disabilities Act, or any other applicable law, or (c) any injury to my physical, emotional, or economic interests (Non-Title VII claims) shall be resolved by binding arbitration pursuant to applicable law.

(Agreement ¶¶ 11–13, Ex. A to Mot. to Compel, ECF No. 9). Because of this arbitration policy, Defendant asserts that this case should be stayed pending arbitration, pursuant to the Federal Arbitration Act. (*See* Mot. to Compel 3:11–13).

## II. LEGAL STANDARD

Section 2 of the Federal Arbitration Act (the "FAA") provides that:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. "In enacting § 2 of the [FAA], Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984). Courts place arbitration agreements "upon the same footing as other contracts." *Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989).

Under the FAA, parties to an arbitration agreement may seek an order from the Court to compel arbitration. 9 U.S.C. § 4. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Thus, the Court's "role under the [FAA] is . . . limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Lee v. Intelius, Inc.*, 737 F.3d 1254, 1261 (9th Cir. 2013). If a district court decides that an arbitration agreement is valid and enforceable, then it should either stay or dismiss the claims subject to arbitration. *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1276-77 (9th Cir. 2006).

## III. DISCUSSION

In her Response, Plaintiff argues that the arbitration policy is unconscionable and therefore an unenforceable agreement. (Pl.'s Response 5:1–19, ECF No. 15).

Nevada possesses a strong public policy in favor of arbitration, and arbitration clauses are generally enforceable. *Gonski v. Second Judicial Dist. Court of State ex rel. Washoe*, 245 P.3d 1164, 1168 (Nev. 2010). "Nevertheless, courts may invalidate unconscionable arbitration provisions." *D.R. Horton, Inc. v. Green*, 96 P.3d 1159, 1162 (Nev. 2004); *see also Burch v. Second Judicial Dist. Court of State ex rel. Washoe*, 49 P.3d 647, 650 (Nev. 2002).

"Generally, both procedural and substantive unconscionability must be present in order for a court to exercise its discretion to refuse to enforce a clause as unconscionable." *D.R. Horton*, 96 P.3d at 1162 (citing *Burch*, 49 P.3d at 650). Accordingly, in assessing Plaintiff's arguments regarding the invalidity of the arbitration policy, the Court will first determine whether the policy is procedurally unconscionable, and will then look to whether it is substantively unconscionable.

**A. Procedural Unconscionability**

"An arbitration clause is procedurally unconscionable when a party has no meaningful opportunity to agree to the clause terms either because of unequal bargaining power, as in an adhesion contract, or because the clause and its effects are not readily ascertainable upon a review of the contract." *Gonski*, 245 P.3d at 1169. "Procedural unconscionability often involves the use of fine print or complicated, incomplete or misleading language that fails to inform a reasonable person of the contractual language's consequences." *D.R. Horton*, 96 P.3d at 1162.

In this case, it is apparent that the arbitration policy is not procedurally unconscionable. Rather than being buried within a lengthy employee handbook or presented in fine print, the terms of the arbitration policy are made clear in the text of an eight-page employment agreement. Of these eight pages, language detailing the mediation and arbitration requirements can be found on over a third of the pages. (*See* Agreement ¶¶ 11–18, Ex. A to Mot. to Compel).

Furthermore, each provision of the Agreement contains Plaintiff's separately initialed signature indicating her understanding of the terms. (*See Id.*).[1]

Plaintiff argues that the arbitration clauses were written such that "a reasonable employee would not be put on notice that she was agreeing to forgo her important rights under Title VII and state law . . . ." (Pl.'s Response 9:4–7).  However, this argument is not supported by the language of the Agreement.  In particular, paragraph 17 of the Agreement explicitly outlines in capitalized text that an employee waives certain rights by agreeing to arbitration. (Agreement ¶ 17, Ex. A to Mot. to Compel) ("I UNDERSTAND AND ACKNOWLEDGE THAT BY AGREEING TO ARBITRATION I AM GIVING UP ANY RIGHT THAT I MAY HAVE TO A JUDGE OR JURY WITH REGARD TO ALL APPLICABLE ISSUES CONCERNING MY EMPLOYMENT . . . .").  Even to the extent a party were uncertain of her legal rights, paragraph 18 provides in capitalized text that the employee has the right to consult with legal counsel and negotiate on such terms prior to signing the agreement. (*Id.* ¶ 18). Accordingly, the Court finds Plaintiff had notice that she was foregoing certain rights by agreeing to arbitration.

Plaintiff also argues that the arbitration policy is procedurally unconscionable because it was presented to her on a take-it-or-leave-it basis. (*See* Pl.'s Response 6:26–27).  However, "[t]he Nevada Supreme Court has held that adhesion-contract analysis is inapplicable in the employment context." *Hillgen-Ruiz v. TLC Casino Enterprises, Inc.*, No. 2:14-cv-0437-APG-VCF, 2014 WL 5341676, at *6 (D. Nev. Oct. 20, 2014).  Indeed, in *Kindred v. Second Judicial Dist. Court ex rel. County of Washoe*, the Nevada Supreme Court stated: "An adhesion contract is a standardized contract form offered to consumers of goods and services essentially on a take it or leave it basis, without affording the consumer a realistic opportunity to bargain.  We have never applied the adhesion contract doctrine to employment cases." 996 P.2d 903, 907 (Nev.

---

[1] The Court rejects Plaintiff's argument under N.R.S. 597.995 for the reasons detailed in this section.

2000). Therefore, pursuant to the Nevada Supreme Court's holding in *Kindred*, Plaintiff's argument regarding the disparity in bargaining power between herself and Defendant is unavailing. The Court thus finds that the terms of the arbitration agreement are presented clearly, and Plaintiff had a meaningful opportunity to agree or disagree to the terms.

### B. Substantive Unconscionability

"Substantive unconscionability . . . is based on the one-sidedness of the arbitration terms" and whether those terms are "oppressive." *D.R. Horton*, 96 P.3d at 1162-63. In this case, Plaintiff first argues that the arbitration policy is substantively unconscionable because she "gains no legitimate benefit from the arbitration clauses while Defendant avoids costly litigation and negative publicity for claims which an employee has a legal right to raise in a court of law." (Pl.'s Response 9:23–25). This argument ignores the policy rationale behind arbitration—public policy favors arbitration precisely because the benefits of increased efficiency and decreased costs apply to *both* parties in a dispute. *See D.R. Horton*, 96 P.3d at 1162 ("[A]rbitration generally avoids the higher costs and longer time periods associated with traditional litigation."). Thus, both Plaintiff and Defendant obtain the benefits of arbitration.

Plaintiff next argues that the Agreement is unconscionable because "any claim which an employee brings will be subject to arbitration, but the agreement does not include the same restriction on any claims by the employer." (Pl.'s Response 11:1–2). This argument is directly contradicted by the language of the Agreement. Notably, both the mediation and arbitration clauses contain language that "any" claim arising out of the employment relationship is subject to the terms of the Agreement, regardless of which party brings the claim. (Agreement ¶¶ 11, 12, Ex. A to Mot. to Compel). While these paragraphs enumerate causes of action that would typically be brought by only the employee, the Agreement indicates that these are non-exhaustive lists. (*Id.*). Accordingly, Plaintiff's argument is unsupported by the record.

Plaintiff further argues that the Agreement is unconscionable because "an employee may be forced to bear some cost of the arbitration, including the costs of the employer, or the employee's own costs upon prevailing." (Pl.'s Response 14:24–26). The Ninth Circuit has previously found fee-shifting clauses that expose a party to greater costs than they would bear in federal court to be unconscionable. *See Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 1004 (9th Cir. 2010). In this case, however, the Agreement explicitly limits the costs to those required in court. (*See* Agreement ¶ 17, Ex. A to Mot. to Compel) ("THE ARBITRATOR IS PROHIBITED FROM IMPOSING ANY TYPE OF FEES, COST OR EXPENSE UPON ME THAT I WOULD NOT BE REQUIRED TO BEAR IF I WERE FREE TO BRING A LEGAL ACTION IN COURT."). The Court therefore rejects Plaintiff's argument.

Plaintiff also argues that the Agreement is unconscionable because it creates an unreasonably strict limitations period on an employee complaint. (Pl.'s Response 12:5–6). Specifically, Plaintiff asserts that the Agreement requires mediation prior to arbitration, and the period to request mediation is only 90-days after the event giving rise to the dispute. (*Id.* 11:23–12:9). In support of this argument, Plaintiff relies on the ruling in *Ingle*, which concerned an arbitration clause that barred any dispute brought outside an arbitrary one-year limitations period. *See Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1175 (9th Cir. 2003).

As a general matter, the Court notes that *Ingle* is both legally and factually distinguishable from the instant case. Firstly, *Ingle* was decided under California law, which is not at issue in this case. Secondly, *Ingle* concerned an arbitration clause that created an explicit bar on claims brought outside the limitations period. In contrast, the agreement here only requires the "best efforts" of the parties to mediate prior to engaging in arbitration. (Agreement ¶¶ 12, 13, Ex. A to Mot. to Compel). Thus, failure to submit a mediation request within 90-days does not constitute de-facto waiver of a party's claims.

Even assuming *arguendo* that the disputed portions of the mediation clause were substantively unconscionable, this alone would not render the arbitration requirement unenforceable. To be unenforceable, an arbitration agreement must be both procedurally and substantively unconscionable. *See D.R. Horton*, 96 P.3d at 1162. As stated above, the Court finds the Agreement is not procedurally unconscionable. Furthermore, the arbitration requirement is insulated under the Agreement's severability clause. (Agreement ¶ 21, Ex. A to Mot. to Compel); *See Linebarger v. Devine*, 214 P.2d 1136, 1140 (Nev. 1989) (recognizing the doctrine of severability in Nevada). This clause preserves the parties' agreement to arbitrate if the disputed provisions are collateral to the clause compelling arbitration. *See Lara v. Onsite Health, Inc.*, 2012 WL 4097712, at *13 (N.D. Cal. Sept. 17, 2012) (finding the single substantively unconscionable provision barring injunctive relief severable because the provision is "collateral to the main purpose of the contract" and not even implicated by the plaintiff's case). Here, the general timeframe to initiate mediation is severable from the requirements to arbitrate under the Agreement, and therefore would not affect the arbitration clauses' enforceability.[2]

Based on the foregoing, the Court finds that Plaintiff has failed to show that the agreement at issue is procedurally or substantively unconscionable.[3] Upon finding that a plaintiff's claims are subject to an arbitration clause, the Court may dismiss an action without prejudice instead of staying the action while the arbitration proceeds. *Sparling v. Hoffman Const. Co.*, 864 F.2d 635, 638 (9th Cir. 1988); *Stewart v. Dollar Loan Ctr.*, LLC, No. 2:13-cv-

---

[2] Regardless of the above analysis, Plaintiff's concerns regarding the mediation requirement are also moot. Defendant is not claiming that Plaintiff's causes of action are barred from arbitration for failure to initiate mediation within the timeframe. To the contrary, Defendant brings the instant Motion explicitly requesting arbitration of the dispute. (Mot. to Compel 6:4–7).

[3] Plaintiff requests that the Court include a declaration that Plaintiff is exempt from any payment of costs associated with arbitration. Any determination of costs rests with the Arbitrator. At this stage, the Court's only role is only to determine whether the employment agreement compels arbitration. *Lee*, 737 F.3d at 1261. For the reasons stated throughout this Order, the Court finds that it does.

0182-JCM-PAL, 2013 WL 3491254, at *4 (D. Nev. July 10, 2013).  Plaintiff does not dispute that her claims fall within the scope of the Agreement.  Accordingly, the Court finds that dismissal is warranted because all of Plaintiff's claims are subject to the arbitration policy.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion to Compel Arbitration, (ECF No. 9), is **GRANTED**.

**IT IS FURTHER ORDERED** that the Complaint is dismissed without prejudice because Plaintiff must first comply with the arbitration requirements.  The Clerk is instructed to enter judgment accordingly and close the case.

**DATED** this __27__ day of March, 2017.

_____
Gloria M. Navarro, Chief Judge
United States District Court